373 A.2d 1101
COMMONWEALTH of Pennsylvania
v.
Edward Paul MOORE, Appellant.

Supreme Court of Pennsylvania.

Submitted March 8, 1976.

Decided June 3, 1977.

William T. Shulick, Blairsville, for appellant.

W. Thomas Malcolm, Dist. Atty., John P. Merlo, Asst. Dist. Atty., Indiana, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Edward Paul Moore, was indicted for murder as a result of the robbery and stabbing death of one Annabell Graham. On February 10, 1975, while represented by counsel, Moore entered a plea of guilty to a general charge of murder in the Court of Common Pleas, Indiana County. At the degree of guilt hearing, the Court upon hearing a portion of the testimony determined that the offense might rise to murder of the first degree. He thereupon secured the assignment of two additional judges to sit as a panel for the purpose of determining the degree of guilt.[1] Following the presentation

---

1. Pennsylvania Rule of Criminal Procedure 319A(b) provides in pertinent part:

    If, after the presentation of the Commonwealth's evidence, the judge is of the opinion that the case may constitute murder

of the evidence and oral argument, the three judge panel unanimously adjudged appellant guilty of murder of the first degree and imposed a sentence of life imprisonment.[2]

The sole issue presented on appeal is whether the Commonwealth presented sufficient evidence to sustain a finding of murder of the first degree. Although appellant did not deny he committed the homicide, he contends that the Commonwealth has failed to meet its burden of proving the specific intent which is required for a conviction of murder of the first degree. We disagree and now affirm the judgment of sentence for the reasons set forth below.[3]

A plea of guilty to an indictment for murder constitutes an admission or confession of guilt to the crime of murder, with the degree of the crime to be determined by the Court.[4] *Commonwealth v. Ewing*, 439 Pa. 88, 264

in the first degree, he may secure the assignment of two other judges of like jurisdiction and power to sit with him to hear the evidence and decide all issue of law and fact. In cases where a panel of three sits, the decision of the court as to the crime shall be by a majority of the judges . . .

2. Jurisdiction of this appeal is pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1).

3. The record indicates that no post verdict motions were filed. Ordinarily, the filing of such motions following a degree of guilt hearing is required to preserve an issue for appellate review. However, where as in the instant case the trial court did not inform the accused that the preservation of the right of appeal was dependent upon the filing of post verdict motions, the failure to comply with our rule will not constitute a waiver. *Commonwealth v. Williams*, 459 Pa. 589, 330 A.2d 854 (1975). In *Williams*, we remanded the matter to permit the trial court to consider the merits of the issues presented. In the instant appeal, the trial court's opinion has ruled upon the question of the sufficiency of the evidence and therefore, we shall consider the matter as properly before us.

4. Under prior statute, the crime of murder was classified as either first or second degree. See Act of June 24, 1939, P.L. 872, § 701, *as amended*, 18 P.S. § 4701 (Appx. 1973) now repealed. Thus, a plea of murder generally was sufficient to sustain a conviction of murder of the second degree. *Commonwealth v. Alston*, 458 Pa. 412, 317 A.2d 229 (1974). Under the present statute

A.2d 661 (1970); *Commonwealth ex rel. Andrews v. Russell,* 420 Pa. 4, 215 A.2d 857 (1966).   If the Commonwealth believes the killing amounted to murder of the first degree, it must produce testimony legally sufficient to raise the homicide to that degree. *Commonwealth v. Bricker,* 458 Pa. 367, 326 A.2d 279 (1974); *Commonwealth v. Ewing, supra; Commonwealth ex rel. Andrews v. Russell, supra; Commonwealth v. Markle,* 394 Pa. 34, 147 A.2d 544 (1958).

The evidence produced at the degree of guilt hearing established that on September 27, 1974, appellant went to the victim's home and requested to use the telephone. Mrs. Graham, age 61, knew appellant and permitted him to enter the residence.   Once inside, appellant demanded money which Mrs. Graham gave him.   As Moore prepared to leave the premises, the deceased grabbed him by the arm and threatened to call the police.   Appellant drew a knife, whch he had purchased the previous day, and slashed the victim across the throat.   He continued to stab Mrs. Graham an additional twenty-eight times in the neck, back and chest.   Moore then took a handbag, later identified as belonging to the deceased, which contained her wallet and personal check book.   Later that day, appellant cashed one of these checks by forging Mrs. Graham's signature.   The handbag was subsequently recovered three days after the killing partially hidden in a patch of weeds approximately 65 feet from appellant's residence.

The autopsy report submitted at the hearing revealed that nine of the wounds were associated with significant tissue and organ damage.   The cause of death was determined to be the initial wound to the throat which severed the carotid artery causing extensive hemorrhaging.

(which was in effect at the time of the commission of this criminal homicide) murder of the second degree has been reclassified as murder of the third degree and felony murder has been reclassified as murder of the second degree.   See Act of March 26, 1974, P.L. 213, No. 46, 18 Pa. C.S. § 2502 (Supp.1976–77).

174

It is axiomatic that the specific intent to kill is the element which distinguishes murder of the first degree from the lesser grades of murder. *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Alston,* 458 Pa. 412, 317 A.2d 229 (1974); *Commonwealth v. Bricker, supra; Commonwealth v. Bowden,* 456 Pa. 278, 309 A.2d 714 (1973); *Commonwealth v. Mosley,* 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947). Moreover, the use of a deadly weapon directed at the vital organ of another human permits an inference that the actor intended the resultant death. *Commonwealth v. O'Searo, supra; Commonwealth v. Bricker, supra; Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972); *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A.2d 359 (1950). This inference was developed in recognition of the difficulty in establishing the requisite state of mind of the actor without resort to circumstantial proof. Thus evidence of the conduct of the accused and the circumstances surrounding the crime may be considered in determining the mental state which accompanied the act. *Commonwealth v. O'Searo, supra; Commonwealth v. Tyrell,* 405 Pa. 210, 174 A.2d 852 (1961); *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A.2d 861, (1960).

Appellant contends, however, that the psychiatric evidence offered by the defense was sufficient to negate the inference of a specific intent to kill. This testimony, although conceding that appellant was legally sane and not psychotic, did indicate that he was impulsive and had limited control over his emotions and feelings. The findings suggested that appellant experienced difficulty in maintaining a conventional attitude, especially when faced with stressful situations. It was theorized that the victim's threat to contact the police *could* have presented such a stress situation as to have produced an impulsive response.

■ On cross examination, however, the witness stated that he did not believe appellant was acting impulsively when he purchased the knife or at the time he went to the house and demanded money. Under further questioning by the court, the psychiatrist indicated that it was also possible that appellant could have planned the crime and intended to take a person's life. The mere introduction of evidence designed to refute the inference of a specific intent to kill does not necessarily prevent the finder of fact from concluding that the killing was in fact intended. Rather, it merely creates a factual question for the resolution of the trier of fact. As this Court has previously stated:

The inference or presumption that arises from the intentional use of a deadly weapon on the vital part of the body of another human being is merely a factual presumption. In the absence of any other evidence as to the defendant's intent, it is sufficient to sustain a finding of murder in the first degree. When evidence is introduced to overcome or rebut this presumption, the question of defendant's intent becomes one for the triers of fact. The triers of fact may, however, consider the presumption along with all other credible evidence presented on the issue of intent. *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608; *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A.2d 359, supra; *Commonwealth v. Wuckerer,* 351 Pa. 305, 41 A.2d 574; *Commonwealth v. Kluska,* 333 Pa. 65, 3 A.2d 398; *Commonwealth v. Troup,* 302 Pa. 246, 153 A. 337; *Commonwealth v. Green,* 294 Pa. 573, 144 A. 743; *Tiffany v. Commonwealth,* 121 Pa. 165, 15 A. 462.

*Commonwealth v. Ewing, supra,* 439 Pa. at 92, 264 A.2d at 663.

■ Having considered all the testimony presented at the hearing, it was the function of the trier of fact to resolve the question of whether appellant had formed the specific intent to commit murder of the first degree.

176

*See Commonwealth v. Fostar,* 455 Pa. 226, 317 A.2d 188 (1974). In reaching its conclusion the court was free to accept or reject in whole or in part the testimony of any witness. *Commonwealth v. London,* 461 Pa. 566, 337 A. 2d 549 (1975); *Commonwealth v. Kearney,* 459 Pa. 603, 331 A.2d 156 (1974); *Commonwealth v. Ewing, supra; Commonwealth v. Tyrell, supra.*

██ From this record the court had ample reason to reject the defense's contention and find a wilful, deliberate and premeditated killing. The purchase of the weapon the day before the killing; the entry into the home, armed and with the obvious intention to rob the victim; the awareness that the victim knew him and could easily have identified him; and the multiple stab wounds inflicted upon the body of a woman of advanced age, all combine to supply an impressive basis for concluding that appellant intended to take the life of his victim.

Judgment of sentence affirmed.

JONES, former C. J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion in which MANDERINO, J., joined.

ROBERTS, Justice, concurring.

I concur in the result. I agree that the evidence was sufficient to establish that the killing constituted murder of the first degree. I cannot agree, however, with the majority's statement that ". . . the specific intent to kill is the element which distinguishes murder of the first degree from the lesser grades of murder."

Under the new Crimes Code, first degree murder is defined as "[a] criminal homicide . . . committed by an intentional killing." 18 Pa.C.S.A. § 2502(a) (Supp. 1976). Intentional killing is defined as "[k]illing by means of poison, or by lying in wait, or by any other

kind of willful, deliberate and premeditated killing." Id. § 2502(d). Thus, to be guilty of murder of the first degree, the defendant " 'must not only intend to kill but in addition he must premeditate the killing and deliberate about it.' " *Commonwealth v. O'Searo*, 466 Pa. 224, 242, 352 A.2d 30, 39 (1976) (dissenting opinion of Manderino, J., joined by Roberts, J.), quoting LaFave & Scott, Criminal Law 563–64 (1972).

As Mr. Justice Manderino correctly observed in *O'Searo*,

"One who possesses the intent to kill may or may not have formed that intent to kill in a willful, deliberate, and premeditated [manner]. If the intent to kill was willful, deliberate, and premeditated, the killing is murder [of] the first degree. If, however, the defendant's intent to kill was not formulated in a willful, deliberate, and premeditated manner, the killing is not murder [of] the first degree . . . ."

466 Pa. at 242, 352 A.2d at 38–39 (dissenting opinion).

Here, there was ample evidence from which the three judge panel could infer that the killing was "willful, deliberate and premeditated." Therefore, I agree that judgment of sentence should be affirmed.

MANDERINO, J., joins in this concurring opinion.