390 A.2d 166

**COMMONWEALTH of Pennsylvania**

v.

**Clarence BAILEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 30, 1977.

Decided July 19, 1978.

H. David Rothman, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Robert A. Zunich, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Clarence Bailey, was convicted by a jury of murder of the first degree. Post-verdict motions were filed and argued, and the court directed both parties to file briefs. Despite repeated requests by the court, no brief was filed by appellant's trial counsel.[1] The post-verdict motions were dismissed and appellant was sentenced to life imprisonment.

Appellant, represented by the Allegheny County Public Defender, filed an appeal to this court. He then petitioned this court to remand the case for an evidentiary hearing on the jury selection procedure in Allegheny County. By a per

---

[1] Appellant's trial counsel was an associate of a law firm which appellant had hired to represent him. Following the filing of post-verdict motions, trial counsel left the law firm and he contends that the firm should have been responsible for submitting the requested brief.

curiam order of February 11, 1971, this court granted appellant's petition.

No further action was taken until July 19, 1973, when appellant, now represented by privately-retained counsel, filed a petition under the Post Conviction Hearing Act (PCHA).[2] Appellant also petitioned for a hearing pursuant to our February 11, 1971 remand order. A hearing *pursuant to both* petitions was held on November 2, 1973.

Following the hearing, the court below filed an opinion, holding that appellant failed to show that blacks were systematically excluded from jury service. The court granted appellant's post-conviction relief by finding that appellant was denied the effective assistance of counsel when trial counsel failed to file a brief in support of post-verdict motions. The court set aside its order dismissing appellant's post-verdict motions and ordered that the post-verdict motions be argued and briefed before the court en banc. The court made no other disposition concerning the other allegation in the PCHA petition.

On August 6, 1976, the court en banc denied appellant's post-verdict motions. This direct appeal followed.

█ Although appellant does not challenge the sufficiency of the evidence, this court has an independent duty to review the evidence in all convictions for murder of the first degree. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187. As we have often stated, the standard when reviewing the sufficiency of the evidence is:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be

2. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. § 1180–1, et seq.

accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence." (Citations omitted.) *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975).

The evidence produced at trial is as follows: In the early morning hours of October 11, 1969, appellant broke into the house of his paramour, Marion Carter, the victim in this case. According to the victim's two children, appellant spread gasoline over the premises and then doused both the victim and her children with gasoline. Appellant then threw a lighted match on the victim. Carter suffered severe burns and as a result of the burns, contracted pneumonia and died. The children, while being burned and suffering permanent injuries, survived. Under these facts, there can be no doubt that the evidence was sufficient to sustain appellant's conviction for murder of the first degree.[3]

Appellant claims that he is entitled to a new trial because he was denied the effective assistance of counsel because of trial counsel's failure to present evidence of appellant's extreme intoxication. The facts are as follows.

At trial, appellant testified in his own defense. On direct examination, appellant stated that prior to the fire, he had been drinking at a few bars in the Hill District section of Pittsburgh. Counsel never asked about the extent of appellant's drinking on the day in question. Appellant admitted going to Carter's house to frighten her. He testified, however, that the fire started when he accidentally spilled gasoline on the water heater. On cross-examination, appellant testified that in six hours of drinking, he had consumed seven or eight beers and four or five shots of whiskey. When asked by the prosecutor whether he believed he was

---

3. At the time of this incident, the Penal Code of 1939 provided: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree." Act of June 24, 1939, P.L. 872, § 701, as amended, Act of December 1, 1959, P.L. 1621, § 1, Former 18 P.S. § 4701.

intoxicated, appellant answered: "Well, I was drinking. I wouldn't say I was drunk but ___". Before appellant could finish, the prosecutor pursued another line of questioning. On re-direct, appellant's counsel did not pursue the issue of intoxication.

At the PCHA hearing, trial counsel's failure to pursue the intoxication issue was challenged as ineffective assistance of counsel. Appellant's counsel testified that he didn't pursue the issue because appellant had told him that while he had been drinking for an extended period, he wasn't intoxicated.

Appellant took the stand and admitted he had understated his drinking to both his attorney and the jury. Appellant told the court he had done this because he didn't want to appear to the jury as a drunkard. He was able to produce two witnesses who testified that appellant had been drinking heavily the evening prior to the fire. One witness estimated that appellant had drunk almost two bottles of whiskey by 8 o'clock the evening before the fire. Appellant kept drinking until 3:30 a. m., when his drinking companion had to be driven home. The witness testified that shortly before he left, appellant was having difficulty standing up. This witness was never interviewed prior to trial.

■ In *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967), we stated:

". . . our inquiry ceases and counsel's assistance is deemed *constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. . . .*" (Emphasis in original.)

The pivotal question thus becomes: Did appellant's trial counsel have a reasonable basis designed to effectuate appellant's interest for not pursuing the issue of intoxication? We answer in the negative, thus finding that appellant was

denied the effective assistance of trial counsel. As such, appellant must be given a new trial.[4]

The Commonwealth urges that such failure is excusable because appellant denied being drunk when initially interviewed by his attorney. We disagree.

In *United States v. DeCoster*, 159 U.S.App.D.C. 326, 332, 487 F.2d 1197, 1203–04 (1973), the court set forth the following duties owed by counsel to a client:

"In General—Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.

"Specifically—(1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client.

\* \* \* \* \* \*

"(3) *Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of*

4. Because of our disposition of this issue, we need not reach appellant's other assignments of error, which are:

   I. Appellant was denied effective assistance of counsel because of trial counsel's failure to move to consolidate the indictment charging involuntary manslaughter and to urge that offense as a viable alternative.

   II. Appellant is entitled to a new trial because the petit jury was impaneled contrary to law.

   A. The Jury Commissioners did not comply with the law as to their duty to make every effort to determine the identity of all residents (taxables) of Allegheny County.

   B. The method of summoning petit jurors revealed a procedure which resulted in the systematic exclusion of blacks from Allegheny County juries.

   III. Neither the indictment nor the evidence warranted the court's instruction on felony murder.

   IV. The court erred in withdrawing voluntary manslaughter from the jury's consideration and in refusing to instruct on that offense as requested.

   V. The court erred in receiving a statement of the deceased as an excited utterance.

   VI. The court erred in not requiring the Commonwealth to justify the unavailability of a portion of appellant's letter.

*defense can be developed. The Supreme Court has noted that the adversary system requires that 'all available defenses are raised'* so that the government is put to its proof.* This means that in most cases a defense attorney,

* *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), quoting *United States v. Bennett*, 409 F.2d 888 (2d Cir. 1969).

or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research." (Emphasis added.) (Footnotes omitted.)

The ABA Standards Relating to the Defense Function, § 4.1 provide:

"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. *The duty to investigate exists regardless of the accused's admissions or statements to the lawyer* of facts constituting guilt or his stated desire to plead guilty." (Emphasis added.)

The commentary to this section further provides:

"The lawyer's duty to investigate is not discharged by the accused's admission of guilt to him or by his stated desire to enter a guilty plea. The accused's belief that he is guilty in fact may often not coincide with the elements which must be proved in order to establish guilt in law. In many criminal cases the real issue is not whether the defendant performed the act in question but whether he had the requisite intent and capacity. The accused may not be aware of the significance of facts relevant to his intent in determining his criminal liability or responsibility. Similarly, a well-founded basis for suppression of evidence may lead to a disposition favorable to the client. The basis for evaluation of these possibilities is the law-

yer's factual investigation for which the accused's own conclusions are not a substitute." (Emphasis added.)

The above-quoted section and comments fit precisely into the problem encountered in this case. Appellant told his attorney that he was not drunk because he did not want to appear as a drunkard to the jury. At the time of this incident, however, appellant's intoxication may have been sufficient to negate the specific intent to kill and thus reduce appellant's culpability to murder of the second degree. *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971). Compare *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975).

Appellant did tell his attorney he had been drinking for a period of time, but denied being intoxicated. This alone should have led counsel to investigate with whom appellant had been drinking. Had trial counsel done this, he would have discovered appellant had been less than truthful.

Other facts exist which have led counsel to investigate appellant's drinking spree. First, the policeman who arrested appellant at the hospital testified at the preliminary hearing that at the time of arrest, appellant was incoherent. Second, appellant's father informed counsel that his son was a teetotaler, thus putting counsel on notice that the alcohol could have had an unusual effect on appellant. Moreover, at this point counsel had information suggesting two contradictory pictures of appellant, one indicating that he was a teetotaler and the other that he had been drinking. From all the facts and circumstances of this case, we can find no reasonable basis for counsel not having pursued the issue of appellant's intoxication. We thus believe appellant, having been denied the effective assistance of counsel, is entitled to a new trial.

Judgment of sentence reversed and the case is remanded to the Court of Common Pleas for a new trial.

PACKEL, J., took no part in the decision of this case.

ROBERTS, MANDERINO and NIX, JJ., concur in the result.

338

POMEROY, J., files a dissenting opinion.

EAGEN, C. J., dissents and is of the view that the issue is waived.

POMEROY, Justice, dissenting.

In my view, the issue on which Opinion announcing the decision of the Court grants a new trial is waived, and in any event cannot be addressed on the present state of the record. I therefore respectfully dissent.

As the opinion of Mr. Justice O'BRIEN notes, the trial court held a hearing pursuant both to appellant's petition under the Post Conviction Hearing Act [1] (PCHA) and to our earlier order remanding the case for an evidentiary hearing relative to the jury selection procedure in Allegheny County. On July 31, 1975, the court denied relief on the jury selection issue but granted relief under the PCHA with respect to one of appellant's four claims of ineffective assistance of trial counsel (failure to file a brief in support of post-verdict motions). The PCHA court therefore ordered that the defendant "be granted an opportunity to argue and brief the post-trial motions before a Court en banc." The court made no disposition of the other post-conviction claims. See *Commonwealth v. Bricker*, 444 Pa. 476, 282 A.2d 31 (1971) and cases following it. When the post-trial motions were then briefed and argued to a court en banc, the claim that trial counsel had been ineffective in not pursuing the defense of intoxication was not included as a reason for a new trial, and it was therefore not passed upon by the trial court.

In today's opinion announcing the decision of the Court, however, this claim of ineffectiveness is considered on the merits for the first time and this consideration results in the grant of a new trial. The reason for this indulgence, apparently, is the thought that counsel may have understood the PCHA court's order to mean that he could argue only reasons in support of a new trial which had been stated in the original motion and left unbriefed. I do not find this

1. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. §§ 1180–1 *et seq.* (Supp.1978).

persuasive. The relief granted by the PCHA court (i. e., to argue and brief post-trial motions *nunc pro tunc*) was necessarily intended as a prelude to a possible direct appeal. Counsel must be charged with knowledge of the basic tenet that an appellate court will not consider an issue on appeal that has not been preserved for review at the trial level. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Williams*, 432 Pa. 557, 248 A.2d 301 (1968). The issue of ineffectiveness of trial counsel was cognizable on direct appeal, and it was therefore incumbent on the new, post-trial motion counsel to assert it before the court en banc. This requirement was made clear by our decision in *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), announced some six months before the PCHA court's order in the case at bar. See also *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Since the issue of ineffectiveness with regard to an intoxication defense was not raised below, it is not properly before this Court. *Commonwealth v. Clair, supra.*

If, however, the lack of preservation of the issue before us is to be overlooked, as is done in Mr. Justice O'BRIEN's opinion, it seems to me patently clear that this Court is in no position to address the claim of ineffectiveness or the question of intoxication on which it depends. We do not have the benefit of any findings by the PCHA court with respect to these matters or as to the credibility of the witnesses who testified concerning them. Such findings are essential to proper appellate review. See, *e. g., Commonwealth v. McIntyre*, 451 Pa. 42, 47–48, 301 A.2d 832, 835 (1973). The opinion announcing the Court's decision, however, accepts at face value and on a cold record the testimony of appellant as to his degree of inebriation at the time of the crime, and on this weak basis proceeds to find trial counsel ineffective for not having disbelieved his client earlier when the client denied being under the influence. With respect, I think this result is insupportable. The most the Court should do with regard to this issue of ineffectiveness is to remand the case

340

to the trial court for findings of fact and a decision as to counsel's performance in light of the facts as found.[2]

**2.** There are, however, other assignments of error (see note 4 of the lead opinion) which, in view of the date of the appellant's conviction, and the indecisive nature of the result reached today, should in my judgment be addressed by the Court before any further proceedings on the issue which is addressed by the opinion announcing the decision.