423 A.2d 1064

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Roger Lee RITCHEY.**

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed Jan. 9, 1981.

Gary D. Wilt, District Attorney, McConnellsburg, for Commonwealth, appellant.

James M. Schall, McConnellsburg, for appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

214

WATKINS, Judge:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Fulton County in a juvenile matter. The court below suppressed certain incriminating statements given to police by the defendant and also suppressed certain evidence allegedly obtained as a result of the aforesaid incriminating statements. The Commonwealth has certified that without this evidence it is unable to proceed to trial. Defendant claims otherwise.

On October 3, 1978, the residences of Craig Bell and Ellis C. Wilkinson were burglarized and items removed therefrom. The incidents were reported to the Pennsylvania State Police and Trooper Martin Marcus was assigned to the case. Marcus proceeded to interview a service station attendant at Warfordsburg, Pennsylvania who told him that some of the stolen items were in the possession of the defendant and that the defendant had attempted to sell some of the items from the trunk of his car at the service station. A Donald Mellott told the officer that the defendant had sold him a blanket from his car at the service station and gave the blanket to the officer. The blanket was one of the stolen items.

On October 5, 1978, Marcus stopped a vehicle being operated by one Frank Mills, the officer having been told that the defendant was with Mills. At first the person riding with Mills lied to Marcus claiming that he was "Ralph Bishop". Upon further questioning the person admitted that he was "Roger Ritchey", the defendant. Marcus then transported the defendant's to Marvania Orchards in Hancock, Maryland, where defendant's mother worked as the officer had determined that the defendant was seventeen years of age at the time, and therefore, was a juvenile. At Mirvania Orchards, Marcus "explained the situation to defendant's mother including the information he had received from Donald Mellott". The defendant then admitted his participation in the crimes to his mother in the officer's presence. Defendant's mother then told Marcus that she wanted to return to work and she began walking away.

Marcus then read the defendant his *Miranda* rights when the mother was six feet away and within hearing distance. He also advised both defendant and his mother that he would file a juvenile petition against the defendant charging him with the offenses.

After advising the defendant of his *Miranda* rights the officer and the defendant went to an adjoining room where defendant fully informed the officer of his participation in the crimes and told the officer of the location and model of his vehicle and of the fact that the stolen property was located in its trunk. During the interview, Marcus failed to inform the defendant or his mother that she could be present during any conversation the officer had with the defendant and could consult with the defendant and give him advice during the conversation. The officer did state, during the suppression hearing, that he believed that defendant's mother understood that she could be present during the interview.

Later Marcus and the defendant went to defendant's car, parked at the aforesaid service station, and Marcus asked defendant to open the trunk, stating that if defendant refused he could obtain a search warrant authorizing same. Defendant opened the trunk revealing the stolen property.

The court below suppressed both defendant's confession and the recovered property found in defendant's vehicle holding that the recovery of the stolen items was occasioned as a result of the statements made by defendant to the officer and was therefore "fruit of the poisonous tree". The Commonwealth has appealed both rulings.

The waiver of the constitutional privilege against self-incrimination and the right to counsel must be a voluntary, knowing and intelligent decision. When a juvenile is involved, the circumstances surrounding such a waiver must be even more carefully scrutinized to insure that proper safeguards have been provided to the suspect. The Commonwealth has the burden of proving that a juvenile waived his rights voluntarily and must prove that any statements

given police were the product of a free and unfettered will. *Commonwealth v. Thomas*, 258 Pa.Super. 332, 392 A.2d 820 (1978).

In determining whether a juvenile's statements were the product of a free and unfettered will specifics such as age, intelligence, and the mental and physical development of the minor suspect are relevant factors to be considered and evaluated. *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975). Before police may interrogate a juvenile, the juvenile must be informed that he has the right to talk with a parent, his counsel or other friendly adult before he must decide whether he wants to talk to the police. *Commonwealth v. Markle*, 475 Pa. 266, 380 A.2d 346 (1977).

In order to meet its burden the Commonwealth must prove at least three things: first, that the adult involved was one interested in the welfare of the juvenile accused; second, that the adult was aware of the rights of the accused, i. e., that the adult is an "informed adult"; and third, that the minor had the opportunity to consult with the adult. *Commonwealth v. Thomas*, supra.

In the instant case the court below determined that the officer had in fact advised the defendant of his *Miranda* rights prior to questioning him and that this had been done in the presence of his mother who was six feet away from them at the time. The court also found as a fact that the officer had not specifically advised the defendant or his mother that she could be present during any conversation between the police and her son and could give her son advice. Because of this failure, the court below was correct in granting defendant's suppression motion. Under such circumstances, the Commonwealth failed to prove that the adult was an "informed" adult since the defendant's mother could not be said to have understood his rights in the absence of an explanation of them to her by the officer. While her son's *Miranda* rights *were* made known to her, his "juvenile" rights, including his right to consult with her

during questioning, were not made known to the defendant's mother. Before a juvenile may be questioned in the presence of his parent both he and the parent or other adult must be read not only the *Miranda* rights, but must also be informed of the juvenile rights to consult with the adult during questioning. See *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977). Because this was not done here, we affirm the order of the court below.

Order affirmed.